IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: Uloric Products Liability | : | Civil Action No. 20-cv-623-MMK |
| Coordinated Pretrial Proceedings | : | |

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | : |
| | : |
| All cases listed in the Attached Appendix | : |

**PLAINTIFFS' CONSOLIDATED MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**

Plaintiffs listed in the attached appendix, through counsel of record, hereby move this Court to remand the instant cases to the Circuit Court of Cook County, Illinois, pursuant to 28 U.S.C. 1447(c), and in support thereof states as follows:

**BACKGROUND AND PROCEDURAL HISTORY**

These cases arise from serious personal injuries sustained by Plaintiffs due to their use of Defendants' gout medication. Plaintiffs originally filed their Petitions in Cook County, Illinois between December 6, 2019 and December 30, 2019. *See* Appendix. Plaintiffs named three Defendants (collectively referred to as "Takeda" or "Defendants"): (1) Takeda Pharmaceuticals U.S.A., Inc. ("TPUSA"), incorporated in Delaware with its **principal place of business at One Takeda Parkway Drive, Deerfield, Illinois;** (2) Takeda Pharmaceuticals America, Inc. ("TPA"), also incorporated in Delaware with its **principal place of business at One Takeda Parkway Drive, Deerfield, Illinois;** and (3) Takeda Pharmaceuticals Company Limited, which is a Japanese entity. Plaintiffs James Kosenesky, Thomas Pearcy, and Dusiyant Patel are also from Illinois (the "Illinois Plaintiffs"). *See* ECF No. 1-1.[1]

---

[1] The attached appendix summarizes the Plaintiffs' citizenship.

1

In these cases, Defendants filed their *Notice of Removals* claiming that TPUSA and TPA were not Illinois corporations and did not maintain their principal business in Illinois at the time the action was filed on January 13, 15, and 16, 2019. *See* Appendix;[2] *see also* ECF No. 1.[3] Takeda claims that their headquarters relocated to Massachusetts before the filing of these lawsuit. As such, Takeda alleges complete diversity and that no Defendant is a citizen of Illinois, the forum state. The facts – including Takeda's own admissions in other cases – suggest otherwise. Additionally, Takeda has not met its heavy burden of proof to establish relocation of its "nerve center" on or before the date that Plaintiffs filed these lawsuits. Consequently, Takeda should be held as a citizen of Illinois, a forum defendant, and remand granted. 28 U.S.C. § 1441(b). As such, there is no diversity of citizenship between the Illinois Plaintiffs and Takeda. And removal is precluded in all cases based on the forum defendant rule. Attorneys' fees and costs should also be awarded because Takeda had no objective basis to remove this case given that it admittedly has its principal place of business in Illinois. 28 U.S.C. § 1447(c).

## ARGUMENT AND AUTHORITIES

**A. LEGAL STANDARD FOR REMOVAL / REMAND**

"'Federal courts are courts of limited jurisdiction,' and '[t]he circumscribed nature of the federal judiciary's jurisdiction is a function of restrictions placed upon it by both the United States Constitution and federal statutory law, both of which must authorize a federal court to hear a given

---

[2] Defendants removed two other Uloric cases. The pro se plaintiff in the first removed case did not move to remand. *See Carol Doran v. Takeda Pharmaceuticals U.S.A., Inc., et. al.*, No. 1:19-cv-7963, (Dec. 5, 2019). Plaintiff in the second removed case filed a motion to remand on January 31, 2020. *Gisele Pernell v. Takeda Pharmaceuticals U.S.A., Inc., et. al.*, No. 1:20-cv-00033, ECF No. 17 (Jan. 31, 2020), which Plaintiff incorporates herein by reference. FED. R. CIV. P. 10.

[3] Unless otherwise specified, the citation to the electronically filed documents refers to the individual cases.

type of case.'" *Munoz v. Ekl,* 2013 U.S. Dist. LEXIS 54538 (N.D. Ill. Apr. 15, 2013) (quoting *Int'l Union Pac. of Operating Eng'rs, Local 150, AFL–CIO v. Ward*, 563 F.3d 276, 280 (7th Cir. 2009)). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *see also Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013) (explaining that a party seeking removal bears the burden of proving the propriety of removal and doubts regarding removal are resolved in favor of the plaintiff's choice of forum in state court).

"Defendants may remove a civil action from state court to the federal district court located in the place where such action is pending, as long as the federal district court had original jurisdiction over the case." *Yassan v. J.P. Morgan Chase & Co.* 708 F.3d 963, 968 (7th Cir. 2013) (internal quotation marks omitted); *see also* 28 U.S.C. § 1441(a). In other words, a "case filed in state court may be removed to federal court only when the case originally could have been filed in federal court." *Ne. Rural Elec. Mbrship Corp. v. Wabash Valley Power Ass'n.*, 707 F.3d 883, 890 (7th Cir. 2013). But removal on grounds of diversity jurisdiction under 28 U.S.C. § 1441(b) is narrower than if the case is originally filed in federal court: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title **may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought**." *See* 28 U.S.C. § 1441(b)(2) (emphasis added). "In other words, the forum defendant rule disallows federal removal premised on diversity in cases where the primary rationale for diversity jurisdiction – to protect defendants against presumed bias of local courts – is not a concern because at least one defendant is a citizen of the forum state." *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013). When removal is based on allegations of jurisdictional

facts, the parties must support their allegations by competent proof. *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97, 130 S. Ct. 1181, 1194-95 (2010). Any attempts of manipulation of the facts should be disregarded. *Id.*

As this establishes, any doubt as to the citizenship of Takeda should be resolved in Plaintiffs' favor.

B.  **THE RELEVANT TIME PERIOD FOR JUDGING CITIZENSHIP IS THE COMMENCEMENT OF THIS LAWSUIT.**

The relevant time period for determining federal jurisdiction is the commencement of the case. *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002). The Court must determine federal jurisdiction based on "the facts as they exist when the case is filed, and not what happens later." *Thomas v. Burnham Trucking Co.,* 778 F. App'x 400, 401 (7th Cir. 2019) ("jurisdiction depends on the state of affairs when a suit begins"); *Am. Nat'l Bank & Tr. Co. v. Bailey,* 750 F.2d 577, 582 (7th Cir. 1984); *Mollan v. Torrance,* 22 U.S. (9 Wheat.) 537, 539 (1824) (holding, "it is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events."). Otherwise a party could create (or defeat) diversity simply by moving after suit is filed. *See Bailey,* 750 F.2d at 582. Although this general rule is not without exception, none appear to apply here; therefore, the relevant inquiry is where TPUSA and TPA's principal place of business was located between December 6, 2019 and December 30, 2019, the date these lawsuits were filed.

C.  **TAKEDA'S DISPUTED CITIZENSHIP**

As referenced above, the express language of Section 1441(b)(2) prohibits removal where one of the defendants is a citizen of the forum state. Pursuant to 28 U.S.C. § 1332(c), a corporation's citizenship is in "any State by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c). In its *Notice of Removals,*

4

Defendants admit that Takeda's U.S. Business Unit had its principal place of business in Illinois for many years. *Johnson,* ECF No. 1, ¶ 8.[4] It vaguely alleges that its "nerve center" changed from Illinois to Massachusetts at some point before the date Plaintiffs filed these complaints, without ever asserting exactly when the executive and administrative functions of Takeda transferred to Massachusetts and without providing competent factual support of these bald assertions. *See Johnson*, ECF No. 1. Moreover, the declaration submitted as Takeda's sole jurisdictional evidence, is contradicted and inconsistent. ECF No. 1-2.[5]

    1.    **Public Information Contradicts Takeda's Jurisdictional Assertions.**

        a.    **Takeda Judicially Admitted Illinois Is its Principal Place of Business in Subsequent Pleadings in Other Litigation.**

Judicial admissions of fact may be relied on by the Court in determining jurisdiction. *Railway Co. v. Ramsey,* 89 U.S. (22 Wall.) 322, 22 L. Ed. 823 (1874). These subsequent, contrary judicial admissions lead to the legal conclusion that Takeda has not met its burden.

As of the date these lawsuits were filed, Takeda filed numerous answers affirmatively admitting that TPA and TPUSA are Delaware Corporations **with its principal place of business in Illinois**. See Takeda Defendants Answer and Separate Affirmative Defense to Plaintiff's Amended Complaint, *Stephen M. Parsons v. Astrazeneca Pharmaceuticals LP, et. al.,* C.A. No. N19c-05-3550 PPI, Superior Court of Delaware (Nov. 26. 2019), at ¶¶ 48, 49, attached Excerpts as Exhibit "A." *Bernice Wilson v. Abbott Laboratories, et. al.*, C.A. No. N19C-05-357 PPI,

---

[4] Takeda's *Notice of Removal* in the other identified cases are less detailed than in *Johnson*, 1:20-cv-00231, ECF No. 1. The subsequently filed removals delete the arguments made in paragraphs 8-10 in the *Johnson* case. *See, e.g., Kosenesky*, 1:20-cv-00319, ECF No. 1. Instead, these abbreviated *Notice of Removals* simply state that Takeda, at the time of filing, was a citizen of Delaware and Massachusetts without discussing the "nerve center test." *See, e.g., Id.*, ¶ 8.

[5] Takeda submitted the same declaration submitted in *Doran*, No. 1:19-cv-7963, ECF No. 1-2 (Dec. 5, 2019), in all subsequently removed cases. *See* ECF No. 1-2.

Superior Court of Delaware (Nov. 26, 2019) at ¶¶ 71, 72, attached Excerpts as Exhibit "B;" *Zeborah Harmon v. Abbott Laboratories, et. al.*, C.A. No. N19C-05-339 PPI, Superior Court of Delaware (Nov. 26, 2019), at ¶¶ 105, 106, attached as Exhibit "C."

On December 11, 2019, TPUSA filed a lawsuit against Mylan Pharmaceuticals alleging "Plaintiff Takeda Pharmaceuticals U.S.A., Inc. is a corporation organized and existing under the laws of the State of Delaware, and its ***principal place of business is located at One Takeda Parkway, Deerfield, Illinois 60015.***" *See* Corrected Public Version of the Complaint, *Takeda Pharmaceuticals U.S.A., Inc. v. Mylan Pharmaceuticals, Inc.* C.A. No. 19-2216-RGA, United States District Court for the District of Delaware, at ¶ 2 (Dec. 11, 2019) (emphasis added; redactions in the original), attached Excerpts as Exhibit "D;" *see also Expedited Motion for Confidential Treatment of Certain Filings* filed on December 2, 2019, and Civil Cover, attached as Exhibit "E."

      **b.**    **Corporate Filings Indicate Illinois Is the Principal Place of Business.**

Another contradiction is Takeda's corporate filings with both the Illinois and Massachusetts Secretary of State designating Illinois as its officers' locations and principal place of business. *See* Illinois Secretary of State, https://www.ilsos.gov/corporatellc/CorporateLlcController (last visited Jan. 29, 2020), attached as Exhibit "F"[6] and Exhibit "G;"[7] *see* Massachusetts Secretary of State, http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?FEIN=000730315&SEARCH_TYPE=1(last visited Jan. 29, 2020), attached as Exhibit "H" and Exhibit "I."

      **c.**    **News Articles Show Takeda's Headquarters Were Still in Illinois.**

---

[6] The Annual Report filing date listed in this report is October 21, 2019.

[7] The Annual Report filing date listed in this report is September 3, 2019.

News reports further demonstrate inconsistencies with Takeda's jurisdictional proof. Ms. Eberle's declaration represents that "the Executive Team for Takeda's U.S. Business Unit also live or in the process of relocating to, have their offices, and spend the majority of their time in Massachusetts in connection with their work for Takeda." ECF 1-2, ¶ 5. But it was reported that Takeda only planned to station 6 of 20 executives in Massachusetts. This is not a majority. *See* Jonathan Saltzman, *Takeda, already a giant in Mass. Biopharma, plans bigger footprint*, THE BOSTON GLOBE (July 04, 2019, 3:36 PM), attached as Exhibit "J," https://www.bostonglobe.com/business/2019/07/04/takeda/m4kAyuj9smwdsrvjzFqJRP/story.html.

Likewise, Ms. Eberle's declaration states that Takeda's headquarters has been progressively moving to Massachusetts (ECF 1-2, ¶ 3) and will technically be open until December 16, 2019 (*Id.* at ¶ 5), but 1,000 employees remained in Deerfield, Illinois as of the date of that article. *See Id.* A more recent report on December 5, 2019, indicated that Takeda would close Illinois headquarters on December 31, 2019, and quotes a Takeda spokesperson as stating that "Takeda will temporarily assign some of its Deerfield employees to work remotely while others will be assigned to a 'transitional work location' in nearby Bannockburn, Illinois…" *Id*. *See* Kyle Blankenship, *Goodbye, Chicago: Takeda sets December deadline for U.S. employees' Boston move*, FIERCEPHARMA (Jun 27, 2019, 10:55 AM), https://www.fiercepharma.com/pharma/goodbye-deerfield-takeda-sets-december-deadline-for-reassignment-1-000-u-s-employees, attached as Exhibit "K." Nothing in Ms. Eberle's declaration affirmatively and conclusively establishes that Takeda closed its Illinois headquarters. *See* ECF No. 1-2.

d. **Takeda's Website Claims Sales and Marketing Are in Illinois.**

And Ms. Eberle's reliance on Takeda's website designating Massachusetts as the U.S. Hub is inconsistent with other pages of Takeda's website. For example, the "who we are" webpage designates the sales office address for TPUSA as Illinois, and claims that TPUSA "currently markets metabolic gout, gastrointestinal, and central nervous system treatments." *See* TAKEDA PHARMACEUTICAL COMPANY LIMITED, attached as Exhibit "L," https://www.takeda.com/who-we-are/company-information/worldwide-offices/Takeda-Pharmaceuticals-USA-Inc/ (last visited Jan. 30, 2020). In other words, the center of activities related to this lawsuit—the sales and marketing of Uloric—occurred in Illinois.

2. **Takeda's Jurisdictional Facts Are Not Supported by Competent Proof Conclusively Establishing Its Principal Place of Business Is Massachusetts.**

A corporation's principal place of business for diversity purposes is defined as the place where a corporation's high-level officers direct, control, and coordinate the corporation's activities metaphorically referred to as the corporation's "nerve center," which is typically found at a corporation's headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 93, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010); *Wis. Knife Works v. Nat'l Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir. 1986). The burden of persuasion for establishing the "nerve center" is on Takeda. *Hertz*, 599 U.S. at 93. And this burden may only be met with competent proof challenging the plaintiff's allegations. *Hertz Corp.* 559 U.S. at 97; *Bearbones, Inc. v. Peerless Indem. Ins. Co.,* 936 F.3d 12, 15 (1st Cir. 2019) (remanding to the district court to determine jurisdictional facts the record is conflicted, and nothing definitively established the principal place of business at the time of filing.). Ms. Eberle's unsworn, conclusory declaration, however, is not competent proof that the Takeda entities relocated their headquarters from Illinois to Massachusetts before these lawsuits were filed.[8]

---

[8] The declaration filed here is the same as filed in *Carol Doran v. Takeda Pharmaceuticals U.S.A., Inc., et. al.*, No. 1:19-cv-7963, ECF No. 1-2 (Dec. 5, 2019). The pro-se plaintiff in that case did not file a remand motion.

First, conspicuously absent from Ms. Eberle's declaration is any information regarding her location at the time this lawsuit was filed even though she is a Vice-President "responsible for managing the integration of Shire Plc and Takeda in the United States." Apparently, Ms. Eberle is stationed in the Greater Chicago area. *See* LinkedIn Profile of Jennifer Eberle, https://www.linkedin.com/in/jennifer-eberle-72ba785/ (last visited Jan. 28, 2020), attached as Exhibit "M." In other words, a key executive / administrator signing the declaration supporting the assertion that Takeda is no longer in Illinois appears to be located in Illinois.

Second, Ms. Eberle's declaration acknowledges that Takeda has been progressively moving the headquarters from its U.S. Business Unit from Illinois to Massachusetts, and the "former U.S. headquarters in Deerfield, Illinois will be closed by the end of 2019." *See* ECF No. 1-2, at ¶ 3. She also references Takeda's website that identifies Massachusetts as its headquarters without providing any specific date or other information in support of this conclusory statement. *See Id.,* at ¶ 4. While a company's headquarters typically is the "nerve center," that is not always the case. *Hertz*, 599 U.S. at 93. The "nerve center test . . . locates a corporation's principal place of business in the state where the majority of its executive and administrative functions are performed." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1203 (E.D. Cal. 2008). Accordingly, the physical location of its business operations is not dispositive. Regardless, at the time these lawsuits were filed, the declaration does not controvert the allegations that Takeda's physical headquarters were still located in Illinois. Moreover, the declaration fails to quantify the level of executive and administrative functions taking place in Illinois versus Massachusetts at the time of filing these cases

Third, Ms. Eberle's declaration is devoid of facts establishing where the majority of executive and administrative functions were performed as of the date these lawsuits were filed. In

9

Paragraph 5, for example, she claims that the "headquarters has already transitioned to facilities in Massachusetts," but fails to state when that happened and acknowledges the facilities in Illinois remained open until December 16, 2019.[9] Similarly, she states that the President of Takeda's U.S. Business Unit has an office in Massachusetts and has been meeting with the U.S. Executive Team there since 2019. Omitted from the declaration is whether the unnamed President of Takeda's U.S. Business Unit had an office in Illinois as of the date of filing. And while there may have been some meetings with the U.S. Executive Team in Massachusetts since 2019, according to Ms. Eberle's declaration, nothing establishes when these meetings occurred, who attended these meetings, what was discussed at these meetings, how often these meetings occurred, and, tellingly, her declaration does not foreclose that any meetings with the unnamed members of the Executive Team occurred in Illinois in the relevant time frame. Moreover, the "nerve center" is not simply an office where it holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion). *Lewis v. Lycoming,* No. 11-6475, 2012 U.S. Dist. LEXIS 88905, at *15-16 (E.D. Pa. June 27, 2012).

Fourth, there are many other gaps in Ms. Eberle's declaration. Nothing conclusively establishes the location where all corporate officers work out of, where all corporate policies and procedures are made and approved, or where corporate functions such as legal, finance, accounting, marketing, and human resources took place at the time this lawsuit was commenced. In fact, Ms. Eberle, who appears to still live in the Greater Chicago Area, admits that not all of Takeda's Executive Team lives in Illinois as of November 26, 2019. *See* Exhibit "M;" ECF No. 1-2, at ¶ 6 (claiming that the unnamed members of the "Executive Team for Takeda's U.S. Business Unit . . . [are] in the process of relocating to . . . Massachusetts in connection with their work for

---

[9] Although, in Paragraph 3 she declares that the facility will remain open until the end of the year.

Takeda."). These types of jurisdictional facts are indicative to establish the "nerve center test." *Avalos v. Cont'l Airlines, Inc.,* No. H-11-711, 2011 U.S. Dist. LEXIS 62527, at *5 (S.D. Tex. June 10, 2011) (providing conclusive evidence that its headquarters is in Chicago and that its main activities – including management, human relations, legal services, payroll, and employee services, are all directed from that location).

By way of example, in *Lewis, supra*, the court outlined facts presented in the record affirmatively reflecting that all executive and administrative functions happened in Massachusetts at the time of filing. 2012 U.S. Dist. LEXIS 88905, at *16-17. For example, the record identified the top officers and established that the top officers were mostly situated in Massachusetts. *Id.* at *16-17. The record also reflected the following occurred in Massachusetts rather than Pennsylvania: all major decisions involving the corporation are made or approved in Massachusetts, an executive officer reviews and approves all monthly financial reports and strategic plans there, reviews of annual strategic assessments and objections occurred there, and reviews and approvals of annual personnel plans occurred in Massachusetts as well as performance evaluations for high level employees, interviews for candidates for senior management positions, approval for all corporate business arrangements, capital expenditures, business restructuring or divestiture, engagement of consultants, appointment of sales agents and representatives, all press releases and communications, collective bargaining agreements, etc., occurred in Massachusetts.

Another example is *Amador v. John Crane, Inc.,* No. CV 14-00272 MMM (MRWx), 2014 U.S. Dist. LEXIS 49999, at *10-11 (C.D. Cal. Apr. 7, 2014). In *Amador,* the proponent of federal jurisdiction proffered a declaration in support of its assertion the principal place of business was in Illinois with the following information:

> John Crane's manufacturing and corporate headquarters are in Illinois. She states that all of the company's high-level officers, including its president, chief financial

11

> officer, and general counsel, have permanent offices in Illinois, that '[v]irtually all meetings affecting the high-level direction, control, and coordination of John Crane take place in the Illinois office locations,' that day-to-day executive and administrative functions occur in Illinois, and that the corporate books and records are kept in Illinois as well.

*Id.* The declarant further reported that "while John Crane has satellite manufacturing and training facilities in California, none of its high-level officers works there." *Id.* The Court, based on these statements, found that the John Crane sufficiently showed that its principal place of business was in Illinois rather than California.

By way of contrast, in the case at bar, Ms. Eberle's declaration does not even identify the Executive Team members she is referring to in her declaration much less where these unnamed Executive Team members were located during the relevant time periods. The declaration quotes a portion of Takeda's website as claiming that Massachusetts is the "U.S. Hub for operations since before November 1, 2019," but the declarant fails to attest that, based on her personal knowledge, that Massachusetts actually was the U.S. Hub and, more importantly, fails to set forth any factual support for this conclusory assertion. In other words, the record is completely devoid of any facts establishing the "nerve center" for Takeda was Massachusetts at the time of filing this lawsuit and Takeda falls short of meeting its burden to conclusively establish Massachusetts was its principal place of business at the time of filing this lawsuit on November 26, 2019. *Praetorian Ins. Co. v. First Class Grp., Inc.*, 2017 U.S. Dist. LEXIS 75672, at *9 (N.D. Ill. May 18, 2017) (remanding because the removing defendants failed to prove that "most, if not all, of its officers and directors work out of its New York office and that all of the decision making that directs Plaintiff's insurance activities takes place there.").

Additionally, the case law is clear that the president's location is not competent jurisdictional proof to establish citizenship. In *Kanzelberger v. Kanzelberger,* 782 F.2d 774 (7th

12

Cir. 1986), for example, the president of the defendant company, who ran it in "rather a dictatorial fashion," was located in Chicago. *Id.* at 777-78. However, all of the company's other management was in Wisconsin, where the plaintiff was located. *Id.* The Seventh Circuit noted that the president's presence in Chicago was insufficient to establish diversity under the "nerve center" test. *Id.* The Court found that due to a review of the facts that "(n)ot only the nerve center, but the body, was on that [filing] date in Wisconsin. Only a severed head was in Illinois." *Id.* at 778 (citations omitted). Analogously, the location of Takeda's unnamed President of its U.S. Business Unit is not sufficient to maintain that the nerve center was definitively in Massachusetts as of November 26, 2019, without more substantiated proof.[10]

Nor is simply listing the corporation's purported headquarters or situs of operations on its website sufficient proof.[11] As the U.S. Supreme Court recognized, this is too easy to manipulate. *See Hertz Corp.*, 559 U.S. at 97. Just as listing a corporation's principal executive offices with the filing of a form on the Securities and Exchange Commission's Form 10-K, without more, is insufficient proof to establish a corporation's "nerve center," so is a corporation's website. *See also Praetorian Ins. Co. v. First Class Grp., Inc.*, 2017 U.S. Dist. LEXIS 75672, at *9 (N.D. Ill. May 18, 2017). In that case, the court found that "(f)orms and other Internet documents thus are not determinative of where ...[a] nerve center is located, and moreover a reference to an "administrative office" does not, in and of itself, indicate that executive decision making occurs there." *Id.*; *see also Avalos*, 2011 U.S. Dist. LEXIS 62527, at *5 (S.D. Tex. June 10, 2011) (finding that the page on Continental's website listing the headquarters as Houston insufficient; the record

---

[10] Besides, the corporate filings contradict this indicating that the President of Takeda's U.S. Business unit is located in Illinois. *See* Exhibits "F"-"I."

[11] As a reminder, this is contradicted by Takeda's website designating Illinois as the location of all sales and marketing for Uloric. *See* Exhibit "L."

13

established the actual center of the company's direction, control, and coordination is Chicago, Illinois).

D. **PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS**

Pursuant to 28 U.S.C. § 1447(c), "An order remanding the case may require payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal." Plaintiffs are entitled to attorneys' fees under § 1447(c) only if the defendant "lacked an objectively reasonable basis for seeking removal." *Lott v. Pfizer, Inc.,* 492 F.3d 789, 792 (7th Cir. 2007). Accordingly, the inquiry is whether Takeda's basis for removal was objectively reasonable. *Id.* Under settled law and by Takeda's own admissions, removal was unjustified because Takeda admittedly is a forum defendant with its principal place of business in Illinois at the time these lawsuits were filed. Takeda has wasted this Court's and Plaintiffs' time and resources. Accordingly, attorneys' fees and costs should be awarded in an amount that is reasonable and just.

## CONCLUSION

In sum, this Court is required to assume the truth for the factual allegations in Plaintiffs' complaints, and Takeda has not met its heavy burden of proof to overcome this presumption and conclusively establish that the principal place of business pursuant to the "nerve center test" was without a doubt Massachusetts at the time of filing these lawsuits. Accordingly, this case should be remanded reasonable and just attorneys' fees and costs should be awarded.

Dated: February 10, 2020          **Respectfully submitted,**

         BY: */s/ Lisa Causey-Streete*
             Allen N. Schwartz
             KRAVOLEC, JAMBOIS & SCHWARTZ
             60 West Randolph Street, 4th Floor
             Chicago, IL 60601
             Phone: 312-782-2525
             Fax: 312-855-0068

Firm ID: 24797

And

Lisa Causey-Streete
Robert L. Salim
SALIM-BEASLEY LLC
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax: (318) 354-1227

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may assess this filing through the Court's system.

*/s/ Lisa Causey-Streete*